---

CEPENOBUIZ v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1911.)

INJURIES TO LICENSEES—ACTIONS—SUFFICIENCY OF EVIDENCE.

In an administrator's action for decedent's death by being struck by a train while crossing defendant's tracks over a path customarily used by pedestrians, plaintiff *held* not entitled to recover.

Appeal from Trial Term, Onondaga County.

Action by Comenaroiz Cepenobuiz, as administrator of John Ktowughs, deceased, against the New York Central & Hudson River Railroad Company. From a judgment for defendant and an order denying a motion for a new trial, plaintiff appeals. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Oliver D. Burden, for appellant.

A. H. Cowie, for respondent.

McLENNAN, P. J. On the 29th day of October, 1907, at about 9:40 p. m., plaintiff's intestate and two companions left the factory or plant of the Pierce, Butler & Pierce Manufacturing Company, where they were employed, to go to their respective homes. They went from such plant through an opening in a fence which marked the northern boundary of defendant's right of way, and, while attempting to cross the most northerly or west-bound passenger track, plaintiff's intestate was struck by an engine approaching from the east, drawing a fast passenger train, and sustained injuries which caused his almost instant death. The factory or plant of Pierce, Butler & Pierce is located in the town of De Witt, a short distance east of the easterly line of the city of Syracuse. South of and adjoining the Pierce, Butler & Pierce premises is defendant's right of way, which was occupied first by the two most northerly or passenger tracks which were parallel and extended practically east and west, the most northerly being known as the west-bound and the other as the east-bound passenger track. Still farther to the south were the tracks of the Chenango Valley Railroad, which was operated by the defendant. Still farther to the south, and on the southerly boundary of defendant's right of way, there was a picket fence through which a hole had been made sufficiently large to permit people to pass through it. On the southerly side of such fence there was an open field comprising several acres and south of it was the towpath of the Erie Canal. From the opening in the fence on the northerly line of defendant's right of way and leading directly across such right of way and over the several tracks of defendant to the opening in the fence in the southerly line, across the vacant field and to the towpath, there was a well-defined path at the time of the accident, which had existed for several years, made by the employés of Pierce, Butler & Pierce and of other manufacturers located in the vicinity and such path had been and at the time was being extensively used by such employés to the knowledge of the defendant.

Under such circumstances, the learned trial court properly held and charged the jury, in substance, that if the path in question existed and was of the character disclosed by plaintiff's witnesses, and the defendant had consented or given an implied license to strangers, including the plaintiff's intestate, to cross its tracks, over and upon such path, then the duty was imposed upon the railroad company to give reasonable warning to plaintiff's intestate of the approach of the train which struck him and caused his death, and that, if it failed in the performance of its duty in that respect, it was guilty of actionable negligence.

We conclude that the trial judge also properly held and charged that, if the headlight upon the engine was burning, the plaintiff's intestate, if he failed to see it, was guilty of contributory negligence. For a distance of three-fourths of a mile or more to the east from the

place where the accident occurred, the tracks on which the engine was approaching and which struck the plaintiff were straight, and such engine was in plain view of the deceased for that distance. If he had looked, as it was his duty to do, he could have seen the approaching train, if the headlight was burning. Concededly his eyesight was good, and therefore it will not do to urge that he looked and did not see. The engine was right there, and, if he looked intelligently and for the purpose of seeing if the headlight was burning, he saw it, and in going upon the track in front of it he was guilty of negligence as a matter of law.

Although the question, namely, whether or not the headlight upon the engine was burning at the time of the accident, was possibly a question for the jury, the evidence on that question was exceedingly meager, and would have justified the jury in rendering the verdict which it did because of the contributory negligence of the deceased.

The only evidence given on behalf of the plaintiff tending to show that the headlight was not burning was given by two witnesses. One of them, Cornakowicz, was one of decedent's companions in crossing the tracks, and testified as follows:

"When we left the works (Pierce, Butler & Pierce's works), we got up as far as the tracks, and noticed a train approaching them, going east, on the second track from the foundry. When I got up to the track, we stopped until the train passed. We noticed a train approaching, and we stopped till the train passed. Then the train passed, and we looked each way, and we didn't notice anything. We hadn't noticed a thing when we crossed the first track. I was the first man crossing the tracks. When I crossed the track, I looked back. When I looked back, I noticed another train approaching from the opposite direction, on the first track from the foundry. Then I warned the fellows behind of the approach of the train. The next one behind was John Ktowughs. He was the second man, and the man coming last was John Klinchunk. When I crossed over after I gave him the warning as I noticed, they looked back. When I looked back I saw after I gave the warning, I looked back and I saw a man running up to another—a person running up to another. It was so dark I couldn't tell which one it was. Then I hollered to them back whether there is any of them alive, and John Klinchunk answered. He said that 'I am alive.'"

The only other evidence tending to show that the headlight was not burning, if it can be said that it tends to prove such fact, was given by the witness Klinchunk, the other companion of plaintiff's intestate. He says:

"As we got to the track, we saw a train approaching from the station going east. As we got to the track, we waited for the train to pass by. Just as quick as the train passed by, there was three of us all looked each way crossing the second track. Theodore was first. The man just on the witness stand. The second was the man that was killed. I was the third man, the last one. Theodore, the first man ahead of the man that was killed, was about a pace ahead as we started to cross the track. I was behind the man that was killed, about a pace. As we got up to the track, the second track, we looked each way and started on going. As we got up there, Theodore was the first man across the track and the second man he was back of him, the one that was killed, and I stood back on the opposite track, No. 1. Then Theodore asked us if there was any of us alive. Then I hollered back to him that I am alive. As we came up to the dead man, he was just gasping his last. It throwed him off the track onto the next one; off the one onto the

next one. * * * After this train had gone east on the south track, I did not hear the train that struck Ktowughs; I didn't hear any sound; I did not see any light in the headlight. The train that struck Ktowughs did not stop. The train, after striking him, went some distance, then it started to ring the bell. It went 50 or 60 paces. I didn't hear any other sound."

There was this meager evidence given on behalf of the plaintiff to the effect that the headlight on the engine approaching from the east and which struck the plaintiff was not burning.

The first witness called by the defendant, Mr. Gurgens, testified that he was telegraph operator, and at the time was employed at the tower about a quarter of a mile west from the place of the accident. He says that among his other duties he was required to see if there was anything about any passenger train that was out of order, which included the headlight, that it was his duty to make a minute of the fact if there was anything out of order about the headlight, and he says that there was no such entry made by him as to the headlight upon the train in question.

The engineer, Mr. Ryan, was called by the defendant, and he testified that an engineer ordinarily running on the road can tell whether his headlight is lit or not by the color ahead of the engine, and he says that, when he made the trip in question, he did not detect that it was not burning. He says that he could see if it was out; that it was not out to his knowledge. He further says, in substance, that, when he arrived at the station in Syracuse a few minutes later, the headlight on the engine was not out.

The fireman, Mr. McEvoy, upon the train in question, was called by the defendant, and stated that while employed upon the engine in question he never knew the headlight to go out, or be out, between Rome and the station in Syracuse.

But, in addition to all this testimony, it is almost incredible that this rapidly moving train should be run from the place of the accident, along and over the streets of a populous city, with the headlight not burning. We think that in view of the evidence given by the defendant upon that issue, if the jury had found that the headlight was not burning, the verdict should have been set aside as contrary to and against the weight of the evidence, and, as above stated, we think that, if such headlight had been burning and plaintiff's intestate failed to see it, it was because he did not look, and that, if he had looked, he would have seen such headlight, and that in either event he was guilty of contributory negligence.

So that so far in this case it cannot be said that the jury did not properly dispose of the two questions thus presented: First, that the defendant was required under the circumstances to give a reasonable warning of the approach of its trains at the crossing; and, second, that the headlight on the engine in question was burning for a distance of three-fourths of a mile, and that the plaintiff's intestate was guilty of contributory negligence in not having observed the approach of such train with the burning headlight, if it was so burning.

But it is urged, and this is the principal ground upon which a reversal of the judgment of no cause of action is asked, that the Trial

Court committed error in charging as defendant's counsel requested as follows:

"Mr. Williams: I ask your honor to charge as matter of law that if the bell was ringing, that was reasonable warning.

"The Court: I so charge.

"Mr. Burden: Exception."

It undoubtedly is true that the court cannot hold that the ringing of a bell at a particular crossing is as a matter of law a sufficient warning of a train approaching such crossing. Neither can it be held as a matter of law that, under all the circumstances, the ringing of a bell or the sounding of a whistle is sufficient to discharge a railroad company of the obligation to approach such crossing with reasonable care, and in such manner as will protect the rights of those who have a right to use the same. But in the case at bar there is no suggestion in the evidence that any other warning should be given than the ringing of a bell. It is not claimed in the evidence that the whistle did not blow, if such warning by the whistle was necessary to a reasonable performance of defendant's duty in the premises. In fact, the word "whistle" is not used in the entire evidence given on behalf of the plaintiff. The plaintiff does give evidence, and that is very meager, to the effect that the bell was not rung and that no other sound was heard by decedent's companions. About the strongest that any witness puts it is that (while he does not pretend that he was listening) he did not hear the bell or any other sound as it passed the point in question, but that, after it had proceeded 50 or 60 paces beyond, he heard the bell commence to ring. Whether the bell did or did not ring, and thus gave adequate warning to the plaintiff's intestate, was submitted to the jury as a question of fact, and apparently the jury found in favor of the defendant upon that issue. Indeed, there was hardly evidence to support a finding to the contrary. But, as before said, it is now urged that the trial court committed reversible error because it charged that, if the bell was ringing, it was a reasonable warning. No other warning, reasonable or otherwise, which ought to have been given by the defendant, was suggested by the evidence or by the pleadings. The court said to the jury, in substance, that the only warning as alleged by the plaintiff which constitutes negligence on the part of the defendant is that the defendant failed to ring the bell as the train approached the private crossing in question. No suggestion was made that the defendant was negligent because it failed to sound the whistle before approaching such crossing, and no proof was given of its failure in that regard.

We therefore conclude that the trial court was right in submitting to the jury the only alleged ground of defendant's failure to ring the bell as the train approached the crossing, and that the court was not required to submit to the jury the question as to whether the defendant had discharged its duty to the plaintiff's intestate in failing to blow the whistle in approaching such private crossing, which failure, as a ground of negligence, was in no manner suggested by the evidence. This court has held in Smith v. Lehigh Valley Railroad Company, 77

App. Div. 43, 79 N. Y. Supp. 106, that the court ought not to submit to the jury as a ground of negligence a theory or proposition which was in no manner pointed out or developed by the evidence. In this case, as we have seen, there was no suggestion in the evidence which rises to the dignity of testimony that the defendant was guilty of negligence because it failed to blow the whistle or because it failed to discharge any other duty than a failure to ring the bell.

We therefore conclude that the learned trial court was right in holding that as bearing upon the question of defendant's negligence the only question was as to whether or not it gave a warning by the ringing of the bell.

It follows that upon all the facts in this case the verdict of the jury of no cause of action was right, and should be affirmed.

Judgment and order affirmed, with costs. All concur. SPRING, KRUSE, and ROBSON, JJ., in result only.